IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BEHRENDS REVOCABLE TRUST,** et al., <br><br>             **Plaintiffs,** <br><br> v. <br><br> **CITY OF GREAT BEND, KANSAS, PROFESSIONAL ENGINEERING CONSULTANTS, ESFELD CONSTRUCTION, RHP PRAIRIE ROSE 1, LLC, DENNIS CALL, ROSS VOGEL, and VOGEL PROPERTIES,** <br><br>             **Defendants.** | Case No. 20-1209-DDC-JPO |

## **MEMORANDUM AND ORDER**

Plaintiffs' basements have flooded. And, plaintiffs allege, it's the City of Great Bend's fault. The Complaint alleges that the City has diverted stormwater to lakes and ponds in plaintiffs' neighborhood, which has caused their basements to flood. So, they've brought claims against the City under 42 U.S.C. § 1983, alleging a taking that violates the Fifth and Fourteenth Amendments, and under Kansas common law for nuisance.

But this Order isn't about those allegations, nor is it about the City's alleged conduct. Instead, this Order addresses a group of defendants who plaintiffs have added to this lawsuit only because the City has identified them as parties who may share some of the fault for the flooded basements (in the event the City is held liable for that flooding). Those defendants—RHP Prairie Rose 1, LLC, Dennis Call, Ross Vogel, and Vogel Properties (collectively, "RHP Defendants")—move the court to dismiss plaintiffs' claims against them under Fed. R. Civ. P.

12(b)(6) (Doc. 66). They argue that plaintiffs haven't alleged any facts capable of supporting a claim against them. Attempting to remedy this, plaintiffs filed a Motion to Amend Complaint (Doc. 80). Also, they attached to their Motion to Amend a proposed Second Amended Complaint, with new factual allegations, which, they contend, remedy any deficiencies in their previous Complaint. *See* Doc. 80-1. Both parties' motions are fully briefed and ready for decision. *See* Docs. 66, 67, 80, 81, 86, 88.

For reasons explained below, the court concludes that the proposed Second Amended Complaint sufficiently alleges a claim for relief—but only against one defendant—RHP Prairie Rose 1, LLC. Plaintiffs have not alleged facts sufficient to state a claim for relief against Dennis Call or Ross Vogel (the individual members of RHP Prairie Rose 1, LLC), nor against Vogel Properties. The court thus dismisses those three defendants from this suit, but without prejudice. So, in all, the court grants in part and denies in part RHP Defendants' Motion to Dismiss. And it grants plaintiffs leave to amend their Complaint, subject to limits outlined by this Order.

**I.     Background**

The factual allegations in this case are straightforward. It's the procedural history that's a bit convoluted. So, the court starts with a brief overview of the factual allegations in the Complaint. Then, the court will review the case's history.

**A.     Factual Background**

The following facts come from the currently operative Complaint in this case. Right now, that's the First Amended Complaint (Doc. 35). As explained more fully below, the proposed Second Amended Complaint (Doc. 80-1) adds just one factual allegation. The court will discuss that allegation later. As with all motions to dismiss, the court accepts plaintiffs' "well-pleaded facts as true, view[s] them in the light most favorable to [them], and draw[s] all

reasonable inferences from the facts" in their favor. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (citation omitted).

The Arkansas River begins in the Rocky Mountains of central Colorado and flows southeast all the way to Arkansas, where it enters the Mississippi River. *Arkansas River*, Encyclopedia Britannica, https://www.britannica.com/place/Arkansas-River (last visited Feb. 7, 2022). Along the way, the Arkansas River runs through the City of Great Bend, Kansas, where plaintiffs live. Doc. 35 at 4 (First Am. Compl. ¶ 15). By the time the Arkansas River reaches Great Bend, it's essentially a "mere stream[.]" *Id.* But, plaintiffs allege, it still provides a natural path for water to flow beyond the City. *Id.* (First Am. Compl. ¶ 16).

The City of Great Bend "lies on a vast ocean of water in the Great Bend Prairie Alluvial Aquifer." *Id.* (First Am. Compl. ¶ 15). Thus, the City lies above a "relatively shallow" water table. *Id.* This condition became a problem for plaintiffs when, they allege, the City decided to change the way it removed rainwater from various neighborhoods in the city. Rather than divert rainwater to the Arkansas River, plaintiffs allege that the City has decided instead to "transport storm water to lakes in [their] neighborhood, some of which have no discharge point." *Id.* (First Am. Compl. ¶¶ 16–17).

Because of this decision, plaintiffs allege that their basements flood on a regular basis. *Id.* at 4–5 (First Am. Compl. ¶ 18). They have resorted to installing sump pumps and dewatering wells in their yards "to try to stay ahead of the City-created water table." *Id.* But, as "soon as their sump pumps [and] dewatering wells stop running, their basements flood." *Id.* Plaintiffs allege that they "are all a failed sump pump [or] dewatering well away from another flood in their basements even in dry periods." *Id.* at 6 (First Am. Compl. ¶ 22). In sum, plaintiffs contend that the City's actions diverting the stormwater to their neighborhood have caused them

substantial damages, including repair costs, lost value in their homes, annoyance, inconvenience, and loss of peace of mind.  *Id.* (First Am. Compl. ¶ 23).

      **B.**      **Procedural History (And Some More Factual Background)**

Plaintiffs first filed their Complaint in August 2020.  *See* Doc. 1.  They named only the City as a defendant, and alleged claims for a taking under the Fifth and Fourteenth Amendments and for nuisance under Kansas law.  Then, following a Scheduling Order issued by Magistrate Judge James P. O'Hara, the City identified all persons or entities who it potentially would seek to compare fault with, if it is held liable for plaintiffs' claims.[1]  *See* Doc. 14 (Comparative Fault Designation); *see also* Doc. 23 (First Amended Comparative Fault Designation).  But the City didn't name just a few third parties who might share any fault.  It named 16—ranging from builders of plaintiffs' homes to developers of plaintiffs' neighborhood and to a governmental entity.  *See* Doc. 23 at 1–2.

In response, plaintiffs sought to add to their lawsuit any third party that the City was "actually serious" about comparing fault with, to ensure "that any finding of fault" for the third parties was "collectible."  Doc. 22 at 3–4.  Recognizing the difficult spot plaintiffs were in—one where the City sufficiently had identified third parties potentially at fault but had not provided any facts why that was so—Judge O'Hara allowed plaintiffs to serve additional interrogatories on the City to discover facts supporting the City's affirmative defense of comparative fault.  *See* Doc. 26 at 3–4.

After some back and forth between the parties and Judge O'Hara, plaintiffs filed their First Amended Complaint in April 2021.  *See* Doc. 35.  That Complaint added nine new

---

[1]     Of note, Kansas allows a defendant in a negligence action to compare fault with other parties or non-parties who are also liable for plaintiff's injury.  Under Kansas law, parties are responsible only for the proportion of damages corresponding to their proportion of fault.  *See* Kan. Stat. Ann. § 60-258a.

defendants to the lawsuit. *See id.* at 2, 7–9 (First Am. Compl. ¶¶ 1, 27–35). But, the City's answers to plaintiffs' interrogatories didn't bear much fruit. Plaintiffs' allegations against these new defendants merely re-stated the general allegations from the City's comparative fault designation. Notably, plaintiffs conceded they were "unable" to confirm independently "the City's allegations of negligence by these third parties." *Id.* at 9 (First Am. Compl. ¶ 36). And, as a result, plaintiffs' "allegations of negligence" against these new defendants were "based solely upon" the City's comparative fault designation. *Id.*

This concession by plaintiffs sparked a flurry of motions to dismiss. Indeed, all but two of the new defendants filed dismissal motions.[2] Plaintiffs, in response, voluntarily dismissed three of the new defendants who filed those motions.[3] These developments leave the current movants—the RHP Defendants, consisting of RHP Prairie Rose 1, LLC, Dennis Call and Ross Vogel (the individual members of RHP Prairie Rose 1, LLC), and Vogel Properties.

There's a reason why plaintiffs haven't voluntarily dismissed their claims against the RHP Defendants. After some independent investigation, plaintiffs now claim they can make specific factual allegations stating a plausible claim for relief against the RHP Defendants. Doc. 80 at 1. So, they have filed a motion seeking leave to amend their Complaint and attached to their motion a proposed Second Amended Complaint. This iteration of the Complaint adds just one new factual allegation against the RHP Defendants. In it, plaintiffs allege that "RHP was the seller and builder of at least three of [their] homes." Doc. 80-1 at 9 (Proposed Second Am. Compl. ¶ 36). The gist of the allegation is that the RHP Defendants "were aware of the elevated

---

[2] Of those two defendants who didn't move to dismiss, one of them (Professional Engineering Consultants) filed an Answer, and the other (Esfeld Construction) has failed to appear.

[3] Those three former defendants are Unruh Excavating, LLC, EBH & Associates, and Central Kansas Surveying and Mapping. *See* Docs. 59, 60, 91. Plaintiffs have voluntarily dismissed their claims against those three defendants without prejudice.

5

water table in the subdivision and put the homes in anyway." *Id.* Specifically, plaintiffs allege that a basement contractor "hit the water table" while building one of plaintiffs' basements, and that the contractor alerted "RHP's supervising agent[,]" who disregarded the contractor's warning about potential flooding, and told the contractor "to put the basement in as called for in the specs." *Id.*

Plaintiffs contend that this allegation is sufficient to justify granting leave to amend their Complaint and denying the RHP Defendants' Motion to Dismiss. Naturally, the RHP Defendants disagree. They argue that such an amendment is futile because it is subject to dismissal. Having reviewed the background of this case and the case's procedural history, the parties' motions are teed up for decision.

## II.  Legal Standard

### A. Motion for Leave to Amend

Rule 15(a) provides that courts should "freely give leave" for a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision whether to grant leave to amend is within a district court's sound discretion. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330 (1971); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason[.]" *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001). "'The futility question is functionally equivalent to the question whether a complaint may

6

be dismissed for failure to state a claim[.]'" *Adams v. C3 Pipeline Constr. Inc.*, 17 F.4th 40, 69 (10th Cir. 2021) (quoting *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999)).

### B. Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) allows a party to move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that the factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court has explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III. Analysis

Plaintiffs seek leave to amend their Complaint in response to the RHP Defendants' Motion to Dismiss. As a result, the parties' briefing of the two motions is intertwined, and mainly focuses on this question: Can the allegations in the proposed Second Amended Complaint survive a motion to dismiss? So, the court will use the RHP Defendants' arguments

7

for dismissal to test the allegations in the proposed Second Amended Complaint. *See Macias v. BNSF Ry. Co.*, No. 19-CV-2305-JWL, 2020 WL 3469680, at *2 (D. Kan. June 25, 2020) (doing the same in a similar situation). But before determining whether plaintiffs' proposed factual allegations state a claim for relief, the court first settles some latent confusion in the papers about the particular claims that plaintiffs assert.

### A.   Plaintiffs' Claims

Implicit in the RHP Defendants' motion is a simple question: What claims, exactly, do plaintiffs bring against these defendants? The court determines that this uncertainty stems from the circumstances which led plaintiffs to join the RHP Defendants.

The only reason the RHP Defendants are here is because the City claimed the RHP Defendants potentially share fault for plaintiffs' damages. And so, the City maintains, if it's found liable for plaintiffs' claims, it will seek to reduce the proportion of its liability under Kansas's comparative fault statute, Kan. Stat. Ann. § 60-258a. As our Circuit has recognized, "under the Kansas law of comparative negligence, a defendant has a right to have the fault of all participants in an occurrence measured in one action, and to reduce his or her liability by the amount of fault attributable to the other participants[.]" *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1496 (10th Cir. 1983). Defendants in federal court in Kansas can compare fault in this way "irrespective of whether [those other participants] are joined as parties or are immune from liability." *Id.* Indeed, our court often resorts to "the concept of 'phantom parties' to determine comparative fault among joint tortfeasors." *White Prompt, Inc. v. David A. Kraft & Assocs., LLC*, No. 20-4030-EFM, 2020 WL 6343305, at *2 & n.20 (D. Kan. Oct. 29, 2020) (collecting cases); *see also Hartford Fire Ins. Co. v. Forward Sci. LLC*, No. 20-2399-HLT-ADM, 2021 WL 26176, at *3 (D. Kan. Jan. 4, 2021). This procedure benefits defendants, who are thus "liable

8

only for [their] own proportionate fault." *Hefley*, 713 F.2d at 1496.  Consequently, plaintiffs seeking complete recovery must bring all potential tortfeasors into the suit or else risk an incomplete recovery.

Here, as Judge O'Hara recognized, plaintiffs were caught in a bind.  The City identified several potential tortfeasors for comparative fault purposes, but provided little information why.  So, plaintiffs, hoping to ensure complete recovery, added multiple defendants to their suit.  But they didn't have any factual allegations to make against those defendants—hence, the various motions to dismiss in this case.  Recognizing their conundrum, plaintiffs ask the court to zoom out from the current motion and recognize their predicament.  They contend the City essentially has shifted the burden of proving comparative fault to plaintiffs themselves.  And so, plaintiffs ask the court to place that burden back on the City to allege facts against the RHP Defendants.[4]  *See* Doc. 88 at 8.

The court recognizes that plaintiffs are in a tough spot.  But, at the end of the day, this is still their case, and they are the ones who've sued the RHP Defendants.  If they want to recover against a certain defendant, they need to allege facts stating a claim against that defendant.  To plaintiffs' credit, they have done their due diligence.  When they concluded they couldn't allege any facts against certain defendants, they have voluntarily dismissed their claims against those

---

[4]  Plaintiffs cite some authority supporting this proposition.  In the late 1970s, our court recognized that in situations like this one, plaintiffs risk incomplete recovery where a defendant argues comparative fault but doesn't reveal any facts supporting a claim against a potential joint tortfeasor.  *See Soper v. Kansas City S. Ry. Co.*, 77 F.R.D. 665, 666–67 (D. Kan. 1978).  Thus, our court ordered the *defendant* in that case to file a "'claim'" against a third party, alleging that the third party was negligent, comparatively at fault for plaintiffs' injury, and thus partially liable for plaintiffs' damages.  *Id.* at 667.  As the court explained in *Soper*, such a "'claim'" would benefit the defendants, because "it may reduce their liability," and the plaintiffs as well, because it would allow them to recover their total damages.  *Id.*

But, as explained more fully below, the court determines that plaintiffs have alleged sufficient facts against at least one defendant, RHP Prairie Rose 1, LLC.  Thus, it's unnecessary to decide whether the court should impose the procedure outlined in *Soper*, where the defendant was the "only party who ha[d] alleged the existence of facts tending to show that [another party] was negligent[.]"  *Id.*

defendants. And, against at least one of the RHP Defendants, they have investigated enough on their own to muster some factual allegations that they seek leave to add to their Complaint.

So, with all this in mind, the court returns to the question: What claims, exactly, do plaintiffs bring in this suit? It's apparent from the proposed Second Amended Complaint—just as it was apparent from previous versions of the Complaint—that plaintiffs bring claims against the City for (1) taking without just compensation, violating the Fifth and Fourteenth Amendments, and (2) nuisance under Kansas law. *See* Doc. 80-1 at 1–2, 5 (Second Am. Compl. ¶¶ 1, 19–20); *see also* Doc. 35 at 2, 5 (First Am. Compl. ¶¶ 1, 19–20). What's less clear is the specific claims plaintiffs bring against the RHP Defendants. The section of the Complaint about the RHP Defendants is called "Count II" but it never attaches any legal theory to this claim. *See* Doc. 80-1 at 6. Presumably, this count of the Complaint simply incorporates the claims already asserted against the City, and merely alleges the same claims against the RHP Defendants.

But plaintiffs can't assert a Fifth Amendment taking claim against the RHP Defendants, because the RHP Defendants are private parties. And plaintiffs haven't alleged that the RHP Defendants acted under color of state law. *See Smith-Johnson v. Murray*, No. 01-2492-JWL, 2002 WL 731693, at *3 (D. Kan. Apr. 16, 2002) (acknowledging that "a section 1983 claim may lie for an alleged violation of the Takings Clause" but dismissing such a claim where nothing in plaintiff's complaint alleged "an action taken under color of a statute or ordinance"). Ultimately though, that's not an issue here because, in their papers, plaintiffs clarify that their "Fifth Amendment claims have nothing to do with anyone other than the City." Doc. 81 at 2 n.1.

So, can plaintiffs bring a nuisance claim against the RHP Defendants? That's a bit more complicated. As our Circuit has recognized, "an action for private nuisance is designed to protect neighboring landowners from conflicting uses of property, not successor landowners

10

from conditions on the land they purchased." *Moore v. Texaco, Inc.*, 244 F.3d 1229, 1231–32 (10th Cir. 2001) (holding, albeit under Oklahoma law, that plaintiffs didn't have a nuisance claim against a prior landowner for its actions in contaminating the soil and water on the property and "alter[ing] and distort[ing] the natural contours of the land"). And, as the RHP Defendants highlight, they don't own any neighboring land, nor do they have any control over the stormwater ponds in plaintiffs' neighborhood that allegedly have produced the flooding in plaintiffs' basements. So, the RHP Defendants contend, plaintiffs can't hold them liable for nuisance. Plaintiffs respond that those arguments miss the point. In their view, the focus here is on the RHP Defendants' conduct that created the conditions leading to the nuisance—and not the nuisance itself. And that conduct, plaintiffs argue, can support a nuisance claim. They're right.

Kansas courts have emphasized repeatedly that nuisance "'is a field of tort liability rather than a type of tortious conduct.'" *Smith v. Kan. Gas Serv. Co.*, 169 P.3d 1052, 1060 (Kan. 2007) (quoting *Culwell v. Abbott Constr. Co.*, 506 P.2d 1191, 1196 (Kan. 1973)); *see also Sandifer Motors, Inc. v. City of Roeland Park*, 628 P.2d 239, 245 (Kan. Ct. App. 1981); *Thorpe v. Ryan E. Kraft Tr.*, 440 P.3d 633 (table), 2019 WL 2147874, at *7 (Kan. Ct. App. May 17, 2019). In other words, nuisance is a "result" that is distinct from a defendant's conduct, which "cause[s]" that result. *Smith*, 169 P.3d at 1061 (quotations omitted). And so, plaintiffs may bring a nuisance action "on a theory of intentional conduct, negligence or strict liability." *Macias v. BNSF Ry. Co.*, No. 19-CV-2305-JWL, 2020 WL 3469680, at *8 (D. Kan. June 25, 2020). Essentially then, plaintiffs' claim for nuisance amounts to a claim of negligence. *See Sandifer Motors, Inc.*, 628 P.2d at 245 (explaining that where allegations of negligence give rise to a claim for nuisance, Kansas courts apply "the rules applicable to negligence").

Not so fast, the RHP Defendants respond. In their view, plaintiffs only bring a claim for *intentional* nuisance against the City. And Kansas law doesn't compare fault for intentional nuisance claims. *See id.* at 248; *see also Scheufler v. Gen. Host Corp.*, Civ. A. No. 91-1053-FGT, 1993 WL 58280, at *5 (D. Kan. Feb. 12, 1993) ("It appears that under Kansas law, the comparative fault statute applies in actions for negligent nuisance but not actions for intentional nuisance."). So, the RHP Defendants contend, if comparative fault doesn't apply to the claims against the City, there's no reason they should remain in this suit.

While it's not entirely clear which theory of nuisance plaintiffs advance, the court disagrees that plaintiffs *only* assert a claim for intentional nuisance against the City. Under Kansas law, an intentional nuisance requires that defendant "act[ed] with the purpose of causing the nuisance," or with knowledge that the nuisance will result or is "substantially certain to result from his or her conduct." *United Proteins, Inc. v. Farmland Indus., Inc.*, 915 P.2d 80, 85 (Kan. 1996). In all versions of their Complaint, plaintiffs allege that the City diverted stormwater to ponds and lakes in their neighborhood, and that, as developer of the neighborhood, the City knew "the elevation of the plaintiffs' basements" and knew "*with reasonable certainty* that flooding w[ould] result from its actions." Doc. 80-1 at 5 (Proposed Second Am. Compl. ¶ 20) (emphasis added); *see also* Doc. 35 at 5 (First Am. Compl. ¶ 20). That allegation sounds more in negligence than it does intent. Judge O'Hara apparently thought so too. That's why he directed the parties to "identify all persons or entities" for "comparative fault" purposes under Kan. Stat. Ann. § 60-258a, Kansas's comparative fault statute. Doc. 13 at 10 (Scheduling Order ¶ 4(a)). More importantly, plaintiffs specifically labeled their allegations against the RHP Defendants as claims of "negligence." *See* Doc. 80-1 at 10 (Proposed Second Am. Compl. ¶ 37); *see also* Doc. 35 at 9 (First Am. Compl. ¶ 36). And, in an earlier filing, plaintiffs explained that the

12

"gravamen" of their Complaint is the Fifth Amendment taking claim, but that "the action also includes negligence and nuisance causes of action which raise comparative fault issues." Doc. 22 at 1–2. In short, plaintiffs don't confine their nuisance claim against the City to a claim based only on intentional conduct.[5] If the City is liable for nuisance based on negligence, then comparative fault will come into play. So, plaintiffs aren't barred from asserting a negligent nuisance claim against the RHP Defendants.

To sum it up: the RHP Defendants are in this case because the City identified them as potentially sharing fault for plaintiffs' damages. But, comparative fault is only relevant for claims based on negligence. And here, plaintiffs assert a claim of negligent nuisance against both the City and the RHP Defendants.[6] In other words, plaintiffs allege that negligent conduct by both the City and the RHP Defendants merged to create the nuisance plaintiffs claim—their flooded basements.

This conclusion leaves one more question. Have plaintiffs alleged sufficient facts against the RHP Defendants to state such a claim?[7]

---

[5] In any event, when a complaint fairly could raise theories of either intent or negligence, our court has construed the complaint "as asserting both alternatives." *Macias*, 2020 WL 3469680, at *5 n.4 (taking this approach where it wasn't "entirely clear whether plaintiffs [we]re asserting claims of intentional trespass, negligent trespass, or both").

[6] Plaintiffs also assert the claim against other defendants who aren't relevant for the motions currently before the court.

[7] In their papers, plaintiffs—for the first time—briefly allude to a claim for fraudulent concealment. *See* Doc. 81 at 15–16 (discussing "the liability of a developer for defects in a residential development" and citing *Griffith v. Byers Constr. Co. of Kan.*, 510 P.2d 198, 200 (Kan. 1973)). But plaintiffs never have raised this theory before now. And the RHP Defendants don't address it at all. So, the court won't address it either in its analysis.

### B. Plaintiffs' Factual Allegations

The RHP Defendants argue that plaintiffs have failed to allege any facts stating a plausible claim for nuisance based on negligence. The court agrees, but only as it applies to three of the four RHP Defendants.

The proposed Second Amended Complaint adds the following allegation:

> Plaintiffs have recently learned that the RHP defendants (Call, Vogel, Vogel Properties and RHP Prairie Rose 1) were aware of the elevated water table in the subdivision and put the homes in anyway. RHP was the seller and builder of at least three of the plaintiffs' homes. According to the basement contractor for RHP, he hit the water table when digging the hole for the sump pit. The basement contractor alerted RHP's supervising agent that he had hit water and that he needed to backfill and raise the basement or they would have trouble if the water table ever came up. The supervisor told him not to backfill and to put the basement in as called for in the specs. The basement contractor did as he was ordered.

Doc. 80-1 at 9 (Proposed Second Am. Compl. ¶ 36).

This amendment—notwithstanding the parenthetical in the opening sentence—alleges no facts capable of supporting a claim against Dennis Call, Ross Vogel, or Vogel Properties. So, without any factual allegations against those defendants individually, plaintiffs fail to state a claim against them. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (dismissing complaint that lumped allegations against multiple defendants in the collective without specifying acts attributable to each defendant). Yet the court recognizes the catch-22 limiting plaintiffs' ability to allege facts against these defendants at this early stage of the litigation, as discussed above. So, while the court dismisses the claims against those defendants, it does so without prejudice. *Kerr v. Polis*, 20 F.4th 686, 718 (10th Cir. 2021) (en banc) (Bacharach, J., concurring) ("'[U]nder Rules 41(b) and 12(b)(6), a district court has discretion to dismiss a complaint without prejudice when the district court concludes that circumstances so warrant.'" (quoting *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 132 (D.C. Cir. 2012) (Kavanaugh, J., concurring))). The circumstances here "so warrant." *Id.*

14

At the same time, plaintiffs' proposed amendment suffices to state a claim against RHP Prairie Rose 1, LLC.[8]  Plaintiffs have alleged that the flooding of their basements unreasonably interfered with their use and enjoyment of their homes, *i.e.*, the nuisance itself, or the "result." They also have alleged negligent conduct by RHP causing that result.  Specifically, plaintiffs allege RHP built at least three of their homes; that RHP's basement contractor hit the water table when constructing one of plaintiffs' homes; that the contractor told "RHP's supervising agent" about the issue and that he needed to "raise the basement" or else "they would have trouble if the water table ever came up[;]" and that RHP's supervising agent told the contractor "to put the basement in as called for in the specs."  Doc. 80-1 at 9 (Proposed Second Am. Compl. ¶ 36). The court concludes that those allegations, accepted as true, cross *Iqbal*'s threshold of plausibility to state a claim for nuisance based on negligence.[9]  *See* 556 U.S. at 678.

Two cases cited by the parties support this conclusion.  *McFeeters v. Renollet*, 500 P.2d 47 (Kan. 1972), also was a flooded basements case.  The plaintiffs there argued that the defendant contractor negligently constructed their homes and defendant's corporate officer negligently supervised construction—causing the flooding that damaged their basements.  *Id.* at 48–49.  After a jury found for plaintiffs, the Kansas Supreme Court affirmed.  The Supreme Court's decision focused mainly on whether plaintiffs could hold the corporate officer personally

---

[8]  Until now, the court has adopted the parties' convention and referred to the four defendants—RHP Prairie Rose 1, LLC, Dennis Call, Ross Vogel, and Vogel Properties—in the collective as the RHP Defendants.  But now that the court has determined plaintiffs haven't alleged any facts capable of supporting a claim against Dennis Call, Ross Vogel, or Vogel Properties, the rest of this Order refers to RHP Prairie Rose 1, LLC as RHP.

[9]  Plaintiffs never identify this "supervising agent."  Nor do they specify whether this agent worked for RHP Prairie Rose 1, LLC, Dennis Call, Ross Vogel, or Vogel Properties.  From the face of the Complaint, the most plausible inference is that this "RHP supervising agent" works for RHP Prairie Rose 1, LLC.  And so, the court applies the factual allegations against this supervising agent only to RHP Prairie Rose 1, LLC.  *See Adams v. C3 Pipeline Constr. Inc.*, 17 F.4th 40, 71 (10th Cir. 2021) (determining that plaintiff's allegation against defendants' alleged "representatives" sufficed to state a claim against those defendants).

liable because he had supervised construction of their homes. But, ultimately, the Kansas Supreme Court determined there was sufficient evidence to hold both the contractor and the corporate officer liable for negligence because the corporate officer failed to conduct certain tests that would've disclosed an elevated water table under plaintiffs' homes. *Id.* at 53.

Here, plaintiffs have alleged facts that—if true—are even more compelling than the facts established in *McFeeters*. Plaintiffs haven't alleged simply that RHP negligently built a basement on top of an elevated water table without inspection. They allege more culpable conduct. Plaintiffs allege that RHP *knew* it was building a basement right on top of the water table and disregarded the risk for potential flooding posed by the elevated water table. If the former set of facts sufficed to establish negligence in *McFeeters*—and the Kansas Supreme Court held they did—then the allegations here suffice to survive a motion to dismiss. To be sure, plaintiffs haven't alleged that any of the other named defendants were the "RHP supervising agent" who allegedly disregarded the basement contractor's warning. And so, the allegations against RHP Prairie Rose 1, LLC can't possibly extend to Dennis Call or Ross Vogel, the individual members of the LLC, on the current allegations. *See Univ. of Kan. v. Sinks*, 565 F. Supp. 2d 1216, 1239 (D. Kan. 2008) (explaining "that an LLC's corporate liabilities in tort are solely those of the LLC" and a plaintiff thus can't hold a member or manager "liable solely based on their status as a member or manager" unless the member or manager committed or participated in the tort). Nor can the allegations extend to Vogel Properties, a separate entity from RHP Prairie Rose 1, LLC.

RHP contends this case is more like a recent case in our court, *Macias v. BNSF Ry. Co.*, No. 19-CV-2305-JWL, 2020 WL 3469680 (D. Kan. June 25, 2020). In that case, Judge Lungstrum dismissed claims for nuisance based on negligence where the Complaint presented

16

purely conclusory allegations. *Id.* at *7. Specifically, plaintiffs had alleged merely that defendants had a "duty not to let water run off of their property onto" plaintiffs' property. *Id.* He reasoned that, without "any allegation that these defendants altered their land or created a condition on their land that resulted in damage to plaintiffs' properties, the court discern[ed] no duty owed to plaintiffs." *Id.*

But here, based on plaintiffs' allegations, the court can discern a duty that RHP owed to plaintiffs. Ironically, in a case cited by RHP for the proposition that they owed no duty to plaintiffs, the Kansas Supreme Court noted the "homebuilder's duty" recognized in *McFeeters*. In the case cited by RHP—*David v. Hett*, 270 P.3d 1102 (Kan. 2011)—the Kansas Supreme Court explained that a homebuilder "has a duty to do the job in a workmanlike manner and exercise reasonable care when doing the work." Id. at 1130. This "homebuilder's duty" applies to RHP, the builder of at least some of plaintiffs' homes. When taken with the rest of plaintiffs' factual allegations—that RHP was aware of the elevated water table and the risk of potential flooding but disregarded that risk and built the basements without modification—the court concludes plaintiffs sufficiently have alleged a claim for nuisance based on negligence to survive a motion to dismiss.

Finally, RHP raises one last argument for dismissal. It contends that any purported negligence on its part didn't cause plaintiffs' damages. As RHP correctly highlights, plaintiffs allege that RHP was the builder, but only for *some* of their homes. Also, plaintiffs' specific factual allegations about the basement contractor and RHP's supervising agent apply only to one home in particular. Thus, RHP contends, because *all* of plaintiffs' basements flooded—including those basements not built by RHP—any purported negligence by RHP couldn't have caused plaintiffs' damages.

17

But RHP's conclusion requires the court to draw an inference against plaintiffs, something the court can't do at this stage. Instead, the court must accept all plaintiffs' factual allegations as true and draw all reasonable inferences from the facts in plaintiffs' favor. *Brooks*, 985 F.3d at 1281. Accepting all factual allegations as true and drawing all inferences in plaintiffs' favor, plaintiffs have stated a claim for nuisance based on negligence, as discussed above. Arguments about the actual cause of plaintiffs' damages, or proportion of fault, must wait for another day.

## IV. Conclusion

In short, the court concludes that plaintiffs sufficiently have alleged a claim of nuisance based on negligence, but only against RHP Prairie Rose 1, LLC.[10] The claims against Dennis Call, Ross Vogel, and Vogel Properties are dismissed, but without prejudice.

The court thus grants plaintiffs leave to file their proposed Second Amended Complaint. But plaintiffs must adjust that pleading to conform with the details of this Order. Also, the Second Amended Complaint should reflect the voluntary dismissals that already have occurred.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the RHP Defendants' Motion to Dismiss (Doc. 66) is granted in part and denied in part, as explained in full in this order. Individual defendants Dennis Call, Ross Vogel, and Vogel Properties are dismissed from this suit, without prejudice.

---

[10]    The court exercises supplemental jurisdiction over this claim under 28 U.S.C. § 1367. The court has original subject matter jurisdiction under 28 U.S.C. § 1331 because plaintiffs assert a § 1983 claim against the City, which is a claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. And the court concludes that plaintiffs' Kansas common law claims "are so related" to the § 1983 claim "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

**IT IS FURTHER ORDERED THAT** plaintiffs' Motion to Amend Complaint (Doc. 80) is granted.  Plaintiffs must file their Second Amended Complaint, consistent with this Order, within 10 days of the date of this Order.

**IT IS SO ORDERED.**

**Dated this 10th day of February, 2022, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree
United States District Judge**